**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## YONO v COUNTY OF INGHAM

Docket No. 166791. Argued on application for leave to appeal April 10, 2025. Decided July 16, 2025.

Nick Yono filed an action in the Ingham Circuit Court against Ingham County, the Ingham County Treasurer, and the Ingham County Land Bank Fast Track Authority, alleging that defendants unconstitutionally took his property without just compensation in violation of Michigan's Takings Clause, Const 1963, art 10, § 2. Plaintiff did not timely pay the property taxes he owed for commercial real property he owned in Lansing. The Treasurer, acting as the foreclosing governmental unit (FGU), foreclosed on the property and offered it for sale at a public auction in conformity with the procedures provided in the General Property Tax Act (GPTA), MCL 211.1 *et seq*. The real property did not sell at the auction, and the Treasurer deeded the property to the Land Bank for $1. Plaintiff argued that he had a vested property right in the equity in his real property equal to its fair market value minus the amount of property taxes owed and costs attributable to the tax foreclosure. Defendants moved for summary disposition. Relying on the Supreme Court's decision in *Rafaeli, LLC v Oakland Co*, 505 Mich 429 (2020), the court, Wanda M. Stokes, J., granted defendants' motion, reasoning that a taking did not occur because there were no surplus proceeds from a sale of the real property.

Plaintiff appealed, and in an unpublished per curiam opinion issued on December 28, 2023 (Docket No. 362536), the Court of Appeals, GLEICHER, C.J., and RICK, J. (JANSEN, J., concurring), reversed the trial court's grant of summary disposition as to plaintiff's takings claim and remanded the case to the trial court for further proceedings to calculate the surplus owed to plaintiff by determining the property's value minus what plaintiff owed on the property when the foreclosure occurred. The Court of Appeals distinguished *Rafaeli* on the basis that *Rafaeli* did not consider what might happen if property failed to sell during a foreclosure sale. Instead, it found informative *Jackson v Southfield Neighborhood Revitalization Initiative*, 348 Mich App 317 (2023), rev'd in part ___ Mich ___ (July 16, 2025) (Docket No. 166320), wherein the Court of Appeals held that there was a viable takings claim because the foreclosed real properties were never offered for sale at a public auction. Defendants sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application for leave to appeal or take other action. ___ Mich ___; 12 NW3d 601 (2024).

In a unanimous per curiam opinion, in lieu of granting leave to appeal, the Supreme Court *held*:

There is no compensable taking under Michigan's Takings Clause, Const 1963, art 10, § 2, if the FGU attempts, in conformity with the requirements of MCL 211.78m(2), to sell foreclosed real property at a public auction and the property does not sell.

1. In *Rafaeli*, the Supreme Court held that an FGU violates Michigan's Takings Clause if it retains the surplus proceeds from a sale of the foreclosed real property at a public auction. Under MCL 211.78m(2), an FGU cannot sell real property at a public auction for less than the minimum bid, which is the amount an FGU is permitted to retain without implicating the Takings Clause. Thus, after a tax-foreclosure sale, an FGU must return only those proceeds that are in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property. This is because, when a property is sold at a public auction, the result of that sale determines the value of the property. It follows, then, that an FGU does not commit a taking requiring just compensation if there is a public auction that produces no surplus proceeds because the property did not sell at the public auction for the minimum price of the taxes and fees owed.

2. In contrast, in *Jackson*, the Supreme Court held that a viable takings claim exists notwithstanding a lack of surplus proceeds when an FGU does not offer a foreclosed real property for sale at a public auction and instead transfers that property to another governmental entity for the minimum bid as required under the "right of first refusal" provision of former MCL 211.78m(1), as amended by 2014 PA 501. *Jackson* was distinguishable from this case because the properties at issue in that case were not even *offered for sale* at a public auction, while a public auction was held in this case. When the government does place real property up for sale, the result of that sale is the correct metric to determine the value of the property interest the government obtained and therefore is determinative of whether a taking occurred, even if the property does not sell and remains in the government's possession. Stated differently, when an FGU attempts, in compliance with MCL 211.78m(2), to sell real property to recover unpaid delinquent taxes at a public auction sale, the result of that sale is conclusive of whether a taking occurred and, if so, how much the property owner is owed in compensation.

3. In this case, the Court of Appeals erred when it concluded that *Rafaeli* did not govern this case and that a taking had occurred. The Treasurer held a public auction at which plaintiff's foreclosed real property did not sell, so there were no "surplus proceeds" from the sale given that the property did not sell. Because there were no surplus proceeds, no taking occurred that required compensation.

Part II(A) of Court of Appeals' opinion reversed; trial court's order granting defendants' motion for summary disposition reinstated with respect to plaintiff's takings claim.

Justice HOOD did not participate because the Court considered this case before he assumed office.

# OPINION

Chief Justice:
    Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 16, 2025

STATE OF MICHIGAN

SUPREME COURT

NICK YONO,

      Plaintiff-Appellee,

v                                  No. 166791

COUNTY OF INGHAM, INGHAM
COUNTY TREASURER, and INGHAM
COUNTY LAND BANK FAST TRACK
AUTHORITY,

      Defendants-Appellants.

BEFORE THE ENTIRE BENCH (except HOOD, J.)

PER CURIAM.

The issue in this case is whether there is a taking under Michigan's Takings Clause, Const 1963, art 10, § 2, when the government forecloses on real property to recover delinquent property taxes and that property fails to sell at a public auction. We hold that there is no compensable taking if the foreclosing governmental unit (FGU) attempts, in conformity with the requirements of MCL 211.78m(2), to sell foreclosed real property at a

public auction and the property does not sell. Such an event establishes, as a matter of law, that the government did not seize property beyond what was owed and therefore did not commit a taking requiring compensation. See *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020). We reverse Part II(A) of the Court of Appeals' opinion and its decision to remand the case to the circuit court, and we reinstate the Ingham Circuit Court's order granting defendants' motion for summary disposition.

## I. FACTS AND PROCEDURAL HISTORY

The dispositive facts are few and undisputed. Plaintiff, Nick Yono, failed to timely pay property taxes owed for 2014 and 2015 on a parcel of commercial real property located in Lansing. The tax delinquency was $1,891 for 2014 and $15,684.41 for 2015. Defendant Ingham County Treasurer (the Treasurer), acting as the FGU, foreclosed on the property and offered it for sale at a public auction. The real property failed to sell, and the Treasurer deeded the property to defendant Ingham County Land Bank Fast Track Authority (the Land Bank) for $1. The parties do not dispute that the foreclosure and auction sale complied with the procedures provided in the General Property Tax Act (GPTA), MCL 211.1 *et seq.*[1]

---

[1] After *Rafaeli* was issued, the Legislature substantively amended the GPTA in response to that decision. See 2020 PA 255, effective January 1, 2021, and 2020 PA 256, effective December 22, 2020. The amendments related to MCL 211.78m—the primary GPTA provision at issue here—do not apply retroactively, and they therefore do not apply to the foreclosure in this case, which occurred before the amendment's effective date. See *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich ___, ___; ___ NW3d ___ (July 16, 2025) (Docket No. 166320); slip op at 15-22. However, 2020 PA 255 did not amend MCL 211.78m in a manner material to our holding in this case. Accordingly, this opinion refers to the current version of the GPTA unless otherwise noted.

Plaintiff filed suit in 2020, alleging that defendants Ingham County, the Treasurer, and the Land Bank unconstitutionally took his real property without just compensation in violation of Const 1963, art 10, § 2, which provides that "[p]rivate property shall not be taken for public use without just compensation . . . ."[2] Specifically, plaintiff argues that he had a vested property interest in the equity in his real property equal to its fair market value minus the amount of property taxes overdue and costs attributable to the tax foreclosure.[3] The circuit court, citing this Court's recent decision in *Rafaeli*, granted defendants' motion for summary disposition under MCR 2.116(C)(10). The court reasoned that there was no taking that required just compensation because there were no "surplus proceeds" from a sale of the real property.

---

Under the GPTA, if no governmental entity exercises its right of first refusal under MCL 211.78m(1), the FGU must hold at least one public "auction sale" at "1 or more convenient locations . . . , which may include an auction sale via an internet website." MCL 211.78m(2). The sale or sales must be held between "the third Tuesday in July" and the "first Tuesday in November" in the same year the FGU obtains title to the foreclosed property. *Id*., citing MCL 211.78k (providing that the FGU obtains fee simple title to a property on March 31 of a particular year). The FGU must provide, at minimum, "[n]otice of the time and location of a sale" by publication made "not less than 30 days before a sale" and "in a notice publication circulated in the county in which the property is located, if there is one." MCL 211.78m(2). "If no notice publication is circulated in that county, publication must be made in a notice publication circulated in an adjoining county." *Id*. The FGU may develop "procedures governing the conduct of the sale and the payment for conveyance of properties under [MCL 211.78m] . . . ." *Id*.

[2] Plaintiff did not raise a claim under the Takings Clause of the United States Constitution, US Const, Am V.

[3] Plaintiff also raised a bailment claim, but he has not challenged in this Court the circuit court's dismissal of that claim, which was affirmed by the Court of Appeals.

3

Plaintiff appealed, and the Court of Appeals reversed the circuit court's grant of summary disposition as to plaintiff's Takings Clause claim and remanded the case to the circuit court for further proceedings to determine the property's value. *Yono v Ingham Co*, unpublished per curiam opinion of the Court of Appeals, issued December 28, 2023 (Docket No. 362536), pp 6, 8. The panel concluded that *Rafaeli*'s reasoning was not dispositive in this case because "the *Rafaeli* Court was not dealing with a scenario like that which has been presented here, and thus had no reason to consider what might happen if property was not sold in a foreclosure sale . . . ." *Id*. at 5. Instead, the panel deemed this case more akin to *Jackson v Southfield Neighborhood Revitalization Initiative*, 348 Mich App 317, 359-360; 18 NW3d 27 (2023), rev'd in part ___ Mich ___; ___ NW3d ___ (July 16, 2025) (Docket No. 166320), in which the Court of Appeals held that there was a viable takings claim where the foreclosed real properties were never offered for sale at a public auction. *Yono*, unpub op at 4-5. The *Yono* panel further reasoned:

> Even though no sale occurred, the fact that there were no surplus proceeds does not at all imply that there was no taking, or that the property lacked any inherent value. Plaintiff here still lost his equitable interest in the property, which certainly had some value, as every parcel of property does, one way or another. This is clearly the sort of taking that the Michigan Takings Clause is designed to prevent, and even though there was no real sale or purchase of the property as a result of the foreclosure, defendants necessarily got more than what they were owed by virtue of retaining the property without paying anything to plaintiff. [*Id*. at 5.]

The Court of Appeals remanded the case to the circuit court and directed it "to calculate the 'surplus' owed [to plaintiff] on the property by reference to the value of the property, less what plaintiff owed on it when the foreclosure occurred." *Id*. at 6.

4

Defendants sought leave to appeal in this Court, and we ordered oral argument on the application, directing the parties to address

> whether the Court of Appeals erred in: (1) holding that the plaintiff successfully established that the defendants violated the Takings Clause of the Michigan Constitution, Const 1963, art 10, § 2; and (2) directing the Ingham Circuit Court to calculate the "surplus" owed on the property by reference to the value of the property less what the plaintiff owed on it when the foreclosure occurred. [*Yono v Ingham Co*, ___ Mich ___, ___; 12 NW3d 601, 601-602 (2024).]

We further ordered that oral argument be heard at the same future session as the oral argument ordered in *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich ___; 12 NW3d 600 (2024). *Yono*, ___ Mich at ___; 12 NW3d at 601.

## II.  STANDARD OF REVIEW

"This Court reviews a circuit court's decision regarding a motion for summary disposition, as well as any constitutional issues, de novo." *Rafaeli*, 505 Mich at 448.

## III.  ANALYSIS

We conclude that *Rafaeli* governs this case and, because plaintiff's foreclosed real property did not sell at the public auction held in compliance with the GPTA, there were no "surplus proceeds" and, therefore, no taking that requires just compensation.

In *Rafaeli*, the Court held that an FGU violates Michigan's Takings Clause if it retains the "surplus proceeds" from a sale of the foreclosed real property at a public auction. *Id*. at 437.  In so holding, the Court rejected the plaintiffs' argument that they were entitled to receive the fair market value of their foreclosed real property, which had been sold at a public auction.  See *id*. at 481-484.  Instead, the Court repeatedly emphasized that an FGU is *only* required "to return *any proceeds* from the tax-foreclosure sale in excess of the

5

delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property—*no more, no less*." *Id*. at 483-484 (emphasis added); see also, e.g., *id*. at 474, 482. This is because, when a property is sold at a public auction, the result of that sale determines the value of the property. Cf. *Freed v Thomas*, 81 F4th 655, 659 (CA 6, 2023) ("[T]he best evidence of a foreclosed property's value is the property's sales price . . . ."). It necessarily follows that an FGU has not committed a taking requiring just compensation if there is a public auction that produces no surplus proceeds because the property failed to sell at the public auction for the minimum price of the taxes and fees owed.

Plaintiff argues—and the Court of Appeals agreed—that *Rafaeli* is not dispositive because it involved a parcel of property that sold at a public auction, not one that failed to sell. Plaintiff contends that this case is more akin to *Jackson*, 348 Mich App at 354-362,[4]

---

[4] The Court of Appeals also relied on federal court decisions addressing claims under the Takings Clause of the United States Constitution, US Const, Am V. *Yono*, unpub op at 5-6, citing *Hall v Meisner*, 51 F4th 185 (CA 6, 2022), *Tyler v Hennepin Co, Minnesota*, 598 US 631; 143 S Ct 1369; 215 L Ed 2d 564 (2023), and *United States v Lawton*, 110 US 146; 3 S Ct 545; 28 L Ed 100 (1884). Because Michigan's Takings Clause has been interpreted to afford greater protection than its federal counterpart, it was permissible to look to these federal decisions for *guidance* in assessing plaintiff's claim under Michigan's Takings Clause. See generally *Rafaeli*, 505 Mich at 454-462; but see *People v Goldston*, 470 Mich 523, 534; 682 NW2d 479 (2004) ("In interpreting [Michigan's] Constitution, we are not bound by the United States Supreme Court's interpretation of the United States Constitution, even where the language is identical."). However, these cases do not support plaintiff's claim for the same reason that *Jackson* does not support his claim; none of them addressed a foreclosed property that was offered for sale at a public auction but did not sell. See *Lawton*, 110 US at 148 (addressing a property not offered for sale at a public auction); *Hall*, 51 F4th at 189 (same); *Tyler*, 598 US at 634-635 (addressing a property sold at public auction).

in which the Court of Appeals held (and we now affirm)[5] that there is a viable takings claim notwithstanding a lack of surplus proceeds when an FGU did not offer a foreclosed real property for sale at a public auction and instead transferred that property to another governmental entity for the minimum bid as required under the then-effective "right of first refusal" provision of MCL 211.78m(1).[6] Plaintiff misreads *Rafaeli* and misunderstands why there is a viable takings claim in *Jackson* that requires just compensation.

*Rafaeli* made clear that seizing real property to collect unpaid taxes does not per se implicate Michigan's Takings Clause. State and local governments have the constitutional authority to tax and, under that authority, may appropriate real property to recover delinquent taxes owed. See, e.g., *Rafaeli*, 505 Mich at 479-480, 479 n 121; see also *Howard v Macomb* Co, 133 F4th 566, 569 (CA 6, 2025) (observing that the federal Takings Clause does not prohibit the government from taxing property or employing measures to collect property taxes to satisfy a tax debt). The government commits a taking only if—when attempting to collect delinquent taxes—it "appropriate[s] property *in excess of what is owed.*" *Rafaeli*, 505 Mich at 480; see also *id*. at 466 (noting that, when foreclosing on a property to recover delinquent taxes, "the government [can] only collect those taxes

_____

[5] See *Jackson*, ___ Mich at ___; slip op at 3, 9.

[6] Under former MCL 211.78m(1), a city, village, or township was required to pay only the minimum bid, i.e., the amount due in taxes and permissible additional expenses, to exercise the right of first refusal to purchase a foreclosed property from the FGU. See *Jackson*, ___ Mich at ___; slip op at 9-10. As amended, if a property owner files a claim under MCL 211.78t to obtain the "remaining proceeds" from the foreclosure of their property, any governmental entity that wants to exercise its right of first refusal must now pay the FGU "*the greater* of the minimum bid or [the property's] fair market value . . . ." MCL 211.78m(1) (emphasis added); *Jackson*, ___ Mich at ___; slip op at 15.

7

actually owed and nothing more"). *Rafaeli* recognized the right to recover only surplus proceeds from the sale of a foreclosed real property because the result of a public auction sale defines whether, and to what extent, the FGU has "appropriate[d] property *in excess of what is owed*." *Id*. at 480; see also *id*. at 462-472 (summarizing authorities recognizing a vested common-law property right to recover the surplus proceeds from the sale of a foreclosed property). By statute, the FGU cannot sell real property at a public auction for less than the "minimum bid," MCL 211.78m(2), which is the functional equivalent of the amount an FGU is permitted to retain without implicating the Takings Clause. See MCL 211.78m(16)(c);[7] *Rafaeli*, 505 Mich at 437. Thus, an FGU's failure to sell the real property at a public auction establishes that the FGU has not taken more than what it was owed.

The distinguishing fact in *Jackson* is not that the real properties were never *sold* at a public auction, but rather that those properties were not even *offered for sale* at a public auction. The statutorily mandated sale of a foreclosed property to another governmental entity upon the exercise of a right of first refusal for only the amount owed in taxes plus permissible costs and fees did not fairly determine if the government appropriated a property interest that exceeded what it was owed. In that context, a property owner may be entitled to compensation if the value of the property interest the government retained

---

[7] The GPTA now provides that "the minimum bid must include all of the delinquent taxes, interest, penalties, and fees due on the property, and may include any additional expenses incurred by the [FGU]" in foreclosing upon and maintaining a property. MCL 211.78m(16)(c). When the foreclosure in this case occurred, former MCL 211.78m similarly required the "minimum bid" to include "all the delinquent taxes, interest, penalties, and fees due on the property," former MCL 211.78m(16)(a)(*i*), and "[t]he expenses of administering the sale, including all preparations for that sale," former MCL 211.78m(16)(a)(*ii*).

exceeded the amount owed. See *Jackson*, ___ Mich at ___; slip op at 10-12; see also *Rafaeli*, 505 Mich at 480 ("What [the government] may not do under the guise of tax collection is seize property valued far in excess of the amount owed in unpaid taxes, penalties, interest, and fees and convert that surplus into a public benefit."). But when the government does place real property up for sale, the result of that sale is the correct metric to determine the value of the property interest the government obtained and therefore is determinative of whether a taking occurred, even if the property does not sell and remains in the government's possession.

## IV. CONCLUSION

When an FGU attempts, in compliance with MCL 211.78m(2), to sell real property to recover unpaid delinquent taxes at a public auction sale, the result of that sale is conclusive of whether a taking occurred and, if so, how much the property owner is owed in compensation. The result of a public foreclosure sale demonstrates as a matter of law the amount of any surplus for purposes of a takings claim; the failure to sell the real property at the auction establishes that the government did not take more property than it was owed. Plaintiff does not argue that defendants failed to comply with the statutory requirements stated in MCL 211.78m(2), nor does he provide any evidence that the Treasurer otherwise acted in bad faith when attempting to sell his real property. Thus, the foreclosure sale here demonstrated that the value of the property interest the government retained is less than what plaintiff owes in property taxes because the property did not sell for the minimum bid. Because there were no proceeds from the sale, plaintiff is not entitled to any compensation. Accordingly, we reverse Part II(A) of the Court of Appeals' opinion

9

and reinstate the Ingham Circuit Court's order granting defendants' motion for summary disposition with respect to plaintiff's takings claim.

> Megan K. Cavanagh
> Brian K. Zahra
> Richard H. Bernstein
> Elizabeth M. Welch
> Kyra H. Bolden
> Kimberly A. Thomas

HOOD, J., did not participate because the Court considered this case before he assumed office.